Argued May 3, affirmed as modified July 13, 1955

# GRAY *v.* GRAY

286 P. 2d 138

*S. H. Burleigh,* argued the cause for appellant. On the brief were Dixon, Burleigh & Swindley, of La Grande.

*Harold A. Fabre,* argued the cause for respondent. On the brief were Kilkenny & Fabre of Pendleton.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, and PERRY, Justices.

PERRY, J.

This is a suit for the partition of real property. The plaintiff and the defendant were formerly wife and husband; during their married life they had acquired approximately 600 acres of real property consisting of 106 acres of farm land and approximately 480 acres of mountain, timber, and pasture land. They held this property as tenants by the entirety. In February, 1952, as a result of differences which had arisen between them, the parties separated, and entered into a stipulation and agreement concerning the custody and support of the minor children and a division of their property, both personal and real. This agreement provided "that in event a divorce decree be granted either of the parties hereto in the future this stipulation may be entered as part of the decree"; that "in event a divorce decree be granted either party hereto, Evelyn Gray [plaintiff] shall have the care, custody and control" of the minor children of the parties; for a division of certain personal property, including the equal division of the moneys on hand at that date; and that plaintiff should "have the right to occupy the house presently occupied by the parties without rent or other claim" on the part of the defendant during "the minority and subsequent schooling, if any," of the minor children; and, without reference to whether or not a decree of divorce was granted, further provided as follows:

"In event Donald N. Gray desires to operate the real property presently owned jointly by the parties hereto subsequent to the entry of any decree of divorce between them he shall have the right so to do[,] it being understood that he shall give reasonable notification to the said Evelyn Gray of his intention so to do and shall pay the said Evelyn Gray a reasonable rental on a crop share basis for her undivided one-half interest therein."

The real property held by the parties at the time of their separation, and which is now the subject of partition, consisted of approximately 106 acres of land where the parties resided, 90 acres being tillable, and a little more than 480 acres being referred to as mountain land, the major portion of which had been logged.

In May, 1952, the parties were divorced. The defendant has continued to farm the 90 acres of tillable land since the divorce of these parties, doing a portion of the farming himself, and hiring others for particular operations in the raising of the crops. At the time the property settlement was entered into, the tillable land was in summerfallow, and in the fall of 1953 defendant harvested a wheat crop upon this cultivated land, placing the grain in the warehouse at Alicel, Oregon, in the name of Gray and Gray. The plaintiff received two fifths of the value of the grain, which is the customary grain rental in that community. The defendant did not notify the plaintiff where the grain was stored, and she had to discover where it was located. In 1954 the plaintiff notified the defendant in writing that his right to operate the jointly owned real property was terminated and cancelled, and plaintiff commenced this suit in partition.

At the conclusion of the trial of the issues, the trial court entered its interlocutory decree adjudging that the plaintiff and the defendant, as tenants in common, were each the owner, seised in fee, of an undivided one half interest in the mountain land described and set out in the decree, and further adjudged "that said plaintiff, Evelyn Gray, is the owner, seised in fee, of an undivided one-half interest and estate in and to the real property hereinafter described and designated 'farm land', but such interest and estate of plaintiff is and shall be subject to the right of defendant to farm

and operate said 'farm land' so long as he shall desire to do so with the attendant obligation to pay plaintiff a reasonable rental on a crop share basis''. The trial court further decreed that the defendant was the owner of the other undivided one half interest in the farm land; and further decreed that the real property shall be partitioned in kind, if possible, and if this cannot be done without great prejudice to the owners, then the real property is to be sold, subject to the right of the defendant to farm and operate said farm land as provided in the decree.

From this decree of the trial court the plaintiff has appealed.

The plaintiff assigns as error the trial court's decreeing that the stipulation in the divorce suit granted and conveyed to the defendant ''the right to farm appellant's interest in the farm land on a crop share basis as long as he should desire so to do''; or—stated differently—granted and conveyed to the defendant a tenancy for life upon the payment of rent.

The basis of the general assignment of error is that the stipulation entered into between the parties is too indefinite to constitute an enforcible lease, and that at most the right of tenancy of the defendant can be only a tenancy at will or a tenancy from year to year, both of which are terminable by the lessor upon proper notice. Plaintiff further contends that, if there was a valid lease for the life of the defendant, then the defendant has seriously violated the terms of the lease, creating a forfeiture.

■ Tenancies are classified in this state, ORS 91.020, as follows:

> ''* * * Tenancy at sufferance, tenancy at will, tenancy for years, tenancy from year to year, tenancy from month to month, tenancy by curtesy,

tenancy by entirety and tenancy for life. The times and conditions of the holdings shall determine the nature and character of the tenancy.''

A determination of the nature and character of the tenancy, therefore, requires interpretation of the written agreement of the parties. In construing an agreement, the cardinal rule to be followed is the ascertainment of the intention of the parties.

■ In the absence of a mistake, imperfection, claim of illegality or fraud, the terms of the agreement of the parties must be found within the writing, parol evidence being admissible only to explain an ambiguity, or apply the writing to the subject matter, but not to vary its terms. *De Wolfe v. Kupers,* 106 Or 176, 188, 211 P 927.

ORS 41.740 reads as follows:

''When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleading or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.020, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties.''

■■ A tenancy at will is defined in ORS 91.050 as follows:

''One who enters into the possession of real estate with the consent of the owners, under circum-

stances *not showing an intention to create a free-hold interest,* is considered a tenant at will.''

Thus a tenancy which is created under an agreement for an uncertain or indefinite term or time creates a tenancy at will. 51 CJS 767, Landlord and Tenant, § 162.

A tenancy from year to year is defined in the statute, ORS 91.060, as follows:

> ''One who enters into the possession of real estate with the consent of the owner, and no certain time is mentioned, but an annual rent is reserved, is considered a tenant from year to year.''

Such a tenancy is a form or species of a tenancy at will. Its duration is uncertain, the yearly period of occupancy being renewed each year until terminated by notice.

■ A life estate is an interest in real property, the duration of which is limited by the life of some person. 2 Thompson on Real Property, Perm ed, 473, § 780. Such an estate may be so expressed that it will terminate on the happening of a contingency occurring prior to the death of the person whose life is used to measure the determinable limit of the estate.

''* * * The indefinite duration of the estate and the fact that it may continue for life places it within the category of estates for life; it matters not how contingent or uncertain the duration of the estate may be, or how probable is its termination in a limited number of years, if it is capable of enduring for the term of a life.'' 31 CJS 40, Estates, § 30. Thus a contingency may arise to defeat or terminate the life estate prior to the death of the person by whose life the full term of the tenancy is to be measured, but this con-

tingency does not prevent the grant from being construed as a life estate.

This rule of a life estate is well exemplified in the case of *Thompson v. Baxter,* 107 Minn 122, 119 NW 797. In that case the owner of the property entered into a contract by which he leased and demised the premises to a party at an agreed monthly rental of $22. The lease, after reciting the rental, provided the following stipulation:

> "To have and to hold the above-rented premises unto the said party of the second part [the tenant], his heirs, executors, administrators, and assigns, for the full term of while he shall wish to live in Albert Lea, from and after the 1st day of December, 1904."

Thus the estate created is a life estate, for it may last as long as the life of the grantee, even though the grant may be sooner terminated at the option of the grantee by his failure to dwell in Albert Lea. Under the circumstances set out in the case of *Thompson v. Baxter,* supra, neither a tenancy at will nor a tenancy from year to year was created since it is clear in the grant that the grantor intended to create a freehold interest in the grantee in the described premises. However, that case is clearly distinguishable from the facts in this case.

It is forcefully argued by the defendant that there is no limit placed upon the time he may desire to operate the property, and, therefore, since he is given the right to operate the property by the plaintiff, the case falls squarely within the rule of *Thompson v. Baxter,* supra. The distinction arises, however, from the use of the words "presently owned jointly by the parties hereto", and the word "operate". Webster's New In-

ternational Dictionary, Second Edition, defines the word "presently" as follows:

> " * * * At present; now; as, the problem that *presently* occupies our attention; also, at the time indicated (by the verb)." (Italics theirs)

And the word "operate" is quite commonly used to mean "to manage".

 The plaintiff and the defendant were entering into a property settlement that was to be conclusive between the parties, whether or not a divorce was sought or granted to either of them. The period of time about which they were speaking was that time prior to the entry of any decree of divorce, for by the consent of the parties the words "subsequent to the entry of any decree of divorce between them" were struck from the agreement. In using the words "presently owned jointly by the parties", if we are to give any significance to their action in striking from the agreement the words "subsequent to the entry of any decree of divorce between them", we can only reach one conclusion, and that is, that so long as the marriage relation of the parties existed, then and only then did the defendant have any rights over the lands jointly owned, and his rights therein were terminated by the decree of divorce. Should the agreement, however, be held to apply subsequent to a divorce, the agreement refers not to the farm land alone, but to all of the land of the parties, whether tillable or not, even as the defendant himself testified. It would require us to place a strained construction indeed upon the word "operate" to hold under the facts of this case, where none of the lands are separately described or, in fact, described at all, that it meant the defendant was entitled to the use and occupancy of the farming lands alone so long

as he desired. It is only consistent with the language used under the surrounding circumstances that the parties intended the defendant was to manage and care for all the real property, receiving all of the income therefrom except such as would be considered a reasonable crop share rental for the tillable portion thereof.

■ While no particular words are absolutely essential to create a life estate, any language which manifests such an intention being sufficient, 2 Thompson on Real Property, Perm ed, 478, § 786, nevertheless, the intention of one to create such an interest in real property should be quite clear and free from ambiguity.

■ We are unable to find in the agreement any intention of the plaintiff to create a freehold interest in her interest in the land in the defendant. Therefore, it follows that the defendant was one who had entered "into possession of real estate with the consent of the owners under circumstances not showing an intention to create a freehold interest" and there being no annual or periodic rent of a shorter period reserved, his tenancy was at will.

The decree of the trial court is affirmed as modified herein.

Neither party shall recover costs in this court.